**In Re: PETITION OF THE COMMITTEE ON RULE 28 OF THE CLEVELAND BAR ASSOCIATION, etc, et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12649.   Decided May 8, 1933

F. B. Bolton, Cleveland, I. R. Morris, Cleveland, Parker Fulton, Cleveland, for appellant.

Newcomb, Newcomb & Nord, Cleveland, and Day & Day, Cleveland, for respondent.

MAUCK, J (4th Dist) sitting by designation.

## OPINION

By MAUCK, J.

It is not necessary to extensively review the evidence before us. That was well done by the able trial judge. The Brotherhood of Railway Trainmen is made up of many thousands of train men engaged in hazardous work resulting in many claims against the employing railroad companies for injuries to such trainmen and for death losses. These claims sometimes fall into the hands of incapable, indolent, inexperienced or dishonest lawyers with resulting loss to the claimants. Sometimes the compensation exacted by lawyers is too much. To protect the members of the Brotherhood the officers devised and put into operation a plan whereby those officers employed counsel for a certain region to represent all those in that region who wanted to assert a claim against their employers. For the region of which Ohio is a part the respondent firm was made such regional counsel. It is conceded that the object of the plan, so far as the Brotherhood is concerned is a noble one. No question is made that the Brotherhood has a right to make rules for the government of its members, nor is it claimed that the Brotherhood is subject to Rule XXVIII of the Supreme Court, or the established Canon of Ethics of the Ohio Bar. The question before the court at this time is solely whether a lawyer or a firm of lawyers in becoming a party to the Brotherhood plan violates this particular rule or the general canon.

The plan is this:

When an injury is suffered by a member, information to that effect is sent to the Legal Aid Department of the Brotherhood. This department secures such facts as it

can by means of a questionnaire and tenders its services for a more detailed investigation. Upon request it puts its own investigators to work to secure the evidence. If legal advice is needed it consults Regional Counsel. If it seems desirable to bring legal proceedings the Legal Aid Department advises the claimant that he can employ whomsoever he wishes, but it advises that he employ Regional Counsel. It says . that Regional Counsel is peculiarly qualified to prosecute his action and that while others will charge a higher commission that Regional Counsel will charge him but twenty percent of the recovery and will advance for him necessary costs and expenses. If the claimant follows the advice so given he signs a contract with Regional Counsel by which he agrees to compensate such Counsel with fifteen percent of the recovery and agrees that such counsel shall further pay over to the Legal Aid Department five per cent of such recovery. It further appears that the Department publishes in its monthly Journal the name and address of the Regional Counsel as such. Exhibit F, setting up the nature of this set-up would indicate that its terms had been formally accepted by Regional Counsel at Birmingham, but it appears that the respondent firm has not in writing formally assented to its terms. It does appear, however, that it recognizes an implied obligation to perform pursuant to its terms. The respondent is, therefore, agreeing to take such cases for personal injuries as come to it through the Legal Aid Department for fifteen percent contingent fee and to collect and remit to the Department an additional five percent of such recovery. This is admittedly a low figure. The respondent accedes to it, however, and the only reasons apparent therefor are that it may reasonably expect that it will secure a large volume of business because of the continuous solicitation to that end being made by the Department and for the favorable publicity resulting from its continuous free advertising in the monthly journal of the Brotherhood.

The results of this plan are these: The Legal Aid Department by publication in the Brotherhood Journal, by circulating the locals, by personal representations and by about all the methods known, is constantly soliciting legal business for the respondent firm. That firm in turn, knowing exactly how its business is being solicited for it impliedly assents to such solicitation and because it expects to get a large volume of business fixes an iron-clad fifteen percent

contingent fee, plus a further five percent charge to be collected by it and paid over to the soliciting agency. It is the sheerest sophistry to say that under these circumstances the respondent is not itself soliciting. It is slight compliment to the perspicacity of others to assume that so flimsy a fabric can effectively disguise the real character of the arrangement. Even "the old women that sit on the committee of Legal Ethics of the American Bar Association" as one of the respondent firm graphically puts it, (p. 553) ought not be deceived by such a device.

Because we find that the respondent firm is, however, guilty of violating the general canon of ethics and the particular rule of the Supreme Court it does not follow that the petitioners are entitled to the relief sought. This is not a case in chancery. To be sure the question of procedure in this court has been waived by a refusal to file a motion to dismiss the appeal. **Drake v Tucker, 83 Oh St 97.** This waiver, however, runs only to the nature of the review in this court. The consent of the parties can not convert a special proceeding into an equitable action.

Courts undoubtedly have inherent power to discipline attorneys practicing before them. The method for such discipline is, however, regulated by §1707 GC, which provides a special proceeding therefor. The disciplinary measures thus provided for are reprimand, suspension and disbarment. In the instant case it is urged that the equitable remedy of injunction be applied. The difficulty of regulating the practice of a profession by injunction must be apparent. Were such a writ to issue in the case at bar, the scheme under review might at once be modified by the interested parties abandoning the advertisement in the Journal, or by abandoning the collection of the five percent or by otherwise altering some particular item of the plan with the result that new actions would arise, or this court be required by contempt proceedings to determine from time to time just how far a process of erosion would be permitted to go in breaking down the established canons of the procession. The court ought not be so used.

If injunction issue in this case there is no reason why this court should not be called upon to regulate the methods of other lawyers by the same sort of process. Each such firm might well see how close it might come to a violation of the rules of practice without being disciplined at all. The letter and spirit and object of the rule

are clear. The method of discipline is plain and adequate. Those desiring to avoid.its violation can do so by refusing to be a party to any plan that is of doubtful ethics; indeed, they need no "plan" at all. The philosophy underlying the Code of Ethics is that the essential merits of a lawyer need no exploitation; that if a man can better try a cause than his fellows, like the man that builds a better mouse trap, the world will beat a path to his door.

Injunction is primarily a writ to protect property rights. Sometimes it has been extended to personal rights and there is a tendency in some states to extend equitable jurisdiction to cover personal rights where otherwise justice can not be accomplished. The Supreme Court of this state has not gone so far. **Snedaker v King, 111 Oh St 225**, was a case more nearly justifying equitable interposition than the case at bar, but under the broad doctrines entertained even by the dissenting judges in that case, injunction could not issue in this case because in the case at bar the petitioners have neither property nor personal rights to be protected.

In denying an injunction we in no way reflect upon the power of the Common Pleas to make the general inquiry it did into the conduct of its practitioners. That power was sustained by the Court of Appeals of Summit County, **26 O.R. 255**, and is thoroughly vindicated by the masterly opinion of Cardoza, J, in People ex Karlin v Culkin, 248 N. Y., 465; 162 NE 487; 60 A. L.R. 851. We do, however, hold that when the facts have been developed by such inquiry a proper remedy to apply is one of those prescribed by §1707 GC.

It is possible that §1707 GC is not constitutional; that the discipline of attorneys is essentially a judicial function upon which the legislature may not trespass and that the courts may employ the remedies recited in that section or any other, including injunction, as the exigencies of a particular situation may require. Into that field we shall not enter. A statute is not avoided as repugnant to the constitution unless the need therefor is imperative. In the case at bar the statutory remedy will be as effective as injunction. It is not believed that the respondent firm will attempt or desire to pursue a course of conduct that is determined by the courts to be improper, or that any attorney will court the severer statutory penalties that would follow a persistent adherence to unethical practices.

Upon the facts before us the judgment of this court is that the respondent firm, Newcomb, Newcomb and Nord, be reprimanded for entering into and continuing the arrangement herein denounced, and the journal entry herein shall constitute such reprimand.

Costs adjudged against respondent firm.

LIEGHLEY, PJ, concurs.
LEVINE, J, dissents.

## DISSENTING OPINION

By LEVINE, J.

I am constrained to dissent from the decision of the majority of this court for the reasons hereinafter set forth.

A careful review of the evidence makes it apparent that the charge lodged against the appellants is purely technical. It is not claimed by the Cleveland Bar Association Committee that the appellants are engaged in what is ordinarily termed "ambulance chasing." Such a claim would be emphatically refuted by the evidence. The technical charge is that the appellants violated Rule 28 of the Supreme Court and of the Canon of Ethics, by reason of their acting as Regional Counsel for the Brotherhood of Railroad Trainmen, it being alleged that the Legal Aid Department of the Brotherhood of Railway Trainmen is, in its nature, a soliciting organization and that therefore when the appellants undertake to represent any members of the Brotherhood of Railroad Trainmen who are referred to them by the Legal Aid Department they do so in violation of Rule 28 and of the Canon of Ethics.

The record discloses certain undisputed facts which I shall enumerate.

1. The Brotherhood of Railway Trainmen is the largest single labor organization in the world, having a membership of 175,000 and its executive offices are located in Cleveland.

2. The Brotherhood of Railroad Trainmen, through its legislative representatives at Washington was largely instrumental in securing the passage of the Federal Employers Liability Act, the Safety Appliance Acts and other National remedial legislation applying to railroad trainmen.

3. Beginning with the convention of 1916, the Brotherhood of Railroad Trainmen, passed the necessary resolutions for the establishment of a Legal Aid Department, which was designed to protect its membership and to secure for its injured members or the widows of its members killed in railroad service, the full benefits of the remedial Federal Acts.

4. The plan of forming a Legal Aid Department was considered by succeeding conventions and the necessary machinery put in motion to form such a department.

5. President A. F. Whitney of the Brotherhood of Railroad Trainmen caused a thorough investigation to be made in 1928 and 1929, and after a plan had been carefully considered by several committees of the Brotherhood, the plan was submitted to a vote of the lodges, and the formation of the Legal Aid Department was approved by an almost unanimous vote; and finally the Legal Aid Department of the Brotherhood started to function on or about the 1st day of May, 1930.

6. The plan of the Legal Aid Department divided the United States into districts and sixteen regional counsels were appointed from Boston to San Francisco and from Atlanta to Minneapolis.

7. The appellants had nothing whatever to do with the formation of the Legal Aid Department, and only after a careful investigation by President Whitney and Tom J. McGrath, General Counsel of the Brotherhood, in which they considered several different law firms, were the appellants offered the assignment as regional counsel for the Cleveland district.

8. During the winter of 1931, Tom J. McGrath, General Counsel for the Brotherhood, together with one or more of these appellants, appeared before the Rule 28 Committee of the Cleveland Bar Association and fully and frankly discussed the plan of the Legal Aid Department, and the Committee on Rule 28 raised no question of any kind, except an objection to the contract then contemplated by the plan whereby five percent of the recovery was returned by the appellants to the Brotherhood for the purpose of helping to defray the expenses of the Legal Aid Department.

9. Following this objection by the Bar Association Committee on Rule 28, a new form of contract was drafted and the same was submitted to the chairman of the then committee on Rule 28 who in substance stated that this new contract answered all the objections of the committee.

When a new committee of the Cleveland Bar Association on Rule 28 was appointed, the question of appellants' conduct was again raised. It will be seen that there was a complete change of attitude on the part of the new Committee with reference to the propriety of appellants' conduct. The new committee disapproved of the plan which was sanctioned by the old committee, by holding in substance that the arrangement between the appellants and the Brotherhood of Railroad Trainmen was a violation of Rule 28 and of the Canon of Ethics. There are two groups of lawyers at variance on the question of what constitutes solicitation under Rule 28. It becomes a matter of pure speculation as to what caused the change of attitude of the Cleveland Bar Association speaking through its committee.

The majority opinion seems to overlook the fact that the Brotherhood plan was fully investigated by the former committee on Rule 28 of the Cleveland Bar Association and that the same was approved by that committee. It likewise seems to overlook the fact that the appellants proceeded to act as regional counsel with the endorsement of the then Bar Committee.

The finding that the appellants wilfully violated Rule 28 is, in my opinion, contradicted by the undisputed fact that the old committee of the Cleveland Bar Association had concluded that the Brotherhood plan was proper and that regional counsel's connection with it was proper. The holding that appellants wilfully violated Rule 28 under the circumstances runs counter to the plain import of the evidence. The element of wilfulness is clearly lacking. Hence the action of appellants does not constitute a violation of Rule 28. They did the things they were told by the old Bar Committee on Rule 28 were proper for them to do, and I can see no justification for a reprimand.

The appellants cited in their brief the case of Joseph D. Ryan, appellee v The Pennsylvania Railroad Company, a corporation, appellant, decided November 22, 1932, by the Appellate Court, the First District of Illinois. This case is in point with the case at bar, the only difference being that there is no rule 28 in Illinois. However, the Canon of Ethics and Legal Ethics in general are the same in Illinois as in Ohio. The questions in the Ryan case were exactly the same as the questions at bar. The Pennsylvania Railroad Company raised the same questions in the Ryan case that the Bar Committee raised in the instant case.

The facts, briefly, in the Ryan case are as follows:

One A. G. Meadows, a member of the Brotherhood of Railroad Trainmen, living in Indianapolis, Indiana, sustained injuries while working for the Pennsylvania Railroad Company which resulted in the loss of his arm. At his request an investigation of his accident was made by the

Brotherhood. After the investigation, the investigator told Meadows that he was entitled to see any regional counsel he desired and that one regional counsel was located in Chicago. Mr. Ryan was that regional counsel. Meadows made a trip to Chicago and interviewed Mr. Ryan, and after some time authorized Mr. Ryan to file a petition in his case against the Pennsylvania Railroad Company. Some time subsequent and before trial, the Pennsylvania Railroad Company settled the case with Meadows direct and took a release from him. Ryan's contract called for twenty percent of the amount of recovery and after the Pennsylvania Railroad had settled the case behind his back, Ryan sued the Pennsylvania Railroad Company for twenty per cent of· the amount paid Meadows. The Pennsylvania Railroad Company, in its defense, asserted that Ryan had no standing in court because the case had been solicited for him by the Brotherhood and that he was guilty of unethical and unlawful conduct. The Pennsylvania Railroad Company also raised the question of the splitting of fees, because it appeared in the Ryan case that under Ryan's contract with Meadows, Ryan was to return six percent of the amount of recovery to the Brotherhood to help defray the expenses of the Legal Aid Department of the Brotherhood.

Thus we see that similar questions were urged against Ryan, regional counsel for the Brotherhood, as are raised against the appellants by the Bar Committee. The Court of Appeals of Cook County, in affirming the judgment of the Superior Court of Cook County, held that the Legal Aid Department was meritorious in every way, and was not against public policy, and that Ryan, as regional counsel, in accepting cases referred to him by the Legal Aid Department, was not guilty of unlawful or unethical solicitation or fee splitting. The Pennsylvania Railroad Company claimed in the Ryan case that it

"can see no difference from the standpoint of legality and ethics between an individual ambulance chaser soliciting personal injury claims and a corporation and its investigators investigating the cases of proposed claimants and influencing said claimants to retain their regional counsel."

The court said in answer to this claim:

"After a careful consideration of all the facts we are satisfied that these contentions and arguments are without merit, and we feel impelled to say that the assertion that the Brotherhood through its Legal Aid Department is akin to an ambulance chaser, and that the petitioner was a beneficiary of an unethical and unlawful system of obtaining clients, is unworthy of the able lawyers who made it."

While there is no Rule 28 in the State of Illinois, yet the Canon of Ethics of the American Bar Association is in force and if Ryan, in Chicago, was not guilty of solicitation, it is difficult wherein these appellants would be guilty of solicitation, even though we have Rule 28 in Ohio, because after all Rule 28 is simply a statement of general legal ethics and the Canon of Ethics of the American Bar Association.

The plan of regional counsel conceived by the Brotherhood of Railroad Trainmen was meritorious and worthy. It sought to protect the members of the Brotherhood of Railroad Trainmen against imposition. It is not tainted with unlawful or unethical elements. It must follow that since it is lawful and ethical for the Brotherhood of Railroad Trainmen to employ counsel that it is not unlawful or unethical for counsel to accept the employment.

When the Supreme Court of Ohio adopted Rule 28, governing the conduct of lawyers it promulgated legislation on that subject. When a legislative body, such as the Congress of the United States, or the Legislature of Ohio, adopts a law, it is invariably open to the test of constitutionality. No law can be passed by a legislative body interfering with the freedom of persons to contract with each other. The arrangements entered into between the appellants and the Legal Aid Department of the Brotherhood of Railroad Trainmen is certainly open to no legal objection. On the question of whether the same constitutes solicitation under Rule 28, we have the decision of two committees of the Cleveland Bar Association at variance with each other, one approving, the other disapproving of the plan. It is impossible to conceive that the Supreme Court of Ohio intended by Rule 28 to lay down an arbitrary rule against solicitation, when the act is neither unlawful nor unethical in fact.

In view of the conflicting opinion among two groups of lawyers constituting the Committee on Rule 28 of the Cleveland Bar Association as to whether the conduct of the appellants is a violation of Rule 28, it may be necessary for the Supreme Court to add something by way of clarification to Rule 28. Until that is done, the appellants cannot in all fairness, be charged with unethical conduct such as to justify a reprimand on the part of this court, or any other court.